**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 24-cv-02492-NYW

FERNANDO BYRD-FARR,

     Applicant,

v.

WARDEN MARC FAIRBARN,[1] and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

     Respondents.

---

## ORDER

---

This matter is before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Application"), [Doc. 1], and Statement of Claims, [Doc. 1-1], filed by Applicant Fernando Byrd-Farr ("Applicant" or "Mr. Byrd-Farr"), wherein Mr. Byrd-Farr challenges the validity of his conviction and sentence in Denver District Court case number 14CR3311. After reviewing the record before the Court, the Court concludes Mr. Byrd-Farr is not entitled to relief and respectfully **DENIES** the Application.

## BACKGROUND

Mr. Byrd-Farr was convicted by a jury in Denver District Court on one count of sexual assault on a child and one count of sexual assault on a child (pattern of abuse). [Doc. 11-4 at 1]. At trial, the evidence demonstrated that Mr. Byrd-Farr dated the victim's

---

[1] Mr. Byrd-Farr utilizes different spellings of Marc Fairbarn's name. *See, e.g.*, [Doc. 1-1 at 28 "Fairbarin")]. Respondents utilize the spelling "Fairbarn." *See, e.g.*, [Doc. 11 at 1]. The Court will utilize "Fairbarn" consistent with Respondents' spelling and the caption of this case in the Court's Electronic Case Files system.

sister and lived in the home with the victim, her sister, and other members of the victim's family. [Doc. 11-13 at 2]. The victim testified that, when she was eleven years old, she told Mr. Byrd-Farr she wanted to be a model and Mr. Byrd-Farr told her he could help her. [*Id.*]. Mr. Byrd-Farr then showed the victim a pornographic video, placed her hand on his penis, and forced her to perform oral sex on him while telling her that is what models do. [*Id.*]. For the next few years, Mr. Byrd-Farr would make the victim perform oral sex on him, record it, and sometimes pay her to do it. [*Id.*]. He also told the victim and her best friend, E.C., that he would pay each of them $100 to perform oral sex on him while he recorded it. [2] [*Id.*]. When one of the victim's family members discovered messages between the victim and E.C. discussing Mr. Byrd-Farr's payment, the victim disclosed the abuse. [*Id.* at 3].

Mr. Byrd-Farr was sentenced to an indeterminate term of twelve years to life in the custody of the Colorado Department of Corrections. [Doc. 11-4 at 1]. On June 13, 2018, Mr. Byrd-Farr's direct appeal was dismissed because the notice of appeal was untimely. *See* [Doc. 11-2].

Mr. Byrd-Farr later sought postconviction relief under Rule 35(c) of the Colorado Rules of Criminal Procedure, asserting various claims that his counsel was ineffective. *See* [Doc. 11-4 at 1]. The Denver District Court (or "trial court") dismissed the matter in part and set an evidentiary hearing for two claims: (1) whether counsel failed to file an appeal at Mr. Byrd-Farr's direction, and (2) whether counsel failed to properly advise Mr. Byrd-Farr regarding indeterminate sentencing. *See* [*id.* at 2]. Ultimately, the trial court

---

[2] Mr. Byrd-Farr refers to this witness as "E. Ca.," *see, e.g.,* [Doc. 1-1 at 32]; however, the Colorado Court of Appeals refers to the same witness as "E.C." in the order affirming the denial of postconviction relief, *see* [Doc. 11-13 at 2]. The Court will refer to her as "E.C."

granted Mr. Byrd-Farr leave to file a direct appeal out-of-time and denied the second claim premised on counsel's sentencing advisement.  [*Id.* at 6].

Mr. Byrd-Farr appealed the denial of postconviction relief.  *See* [Doc. 11-13 at 2]. He also filed a renewed direct appeal based on the trial court's determination that counsel was ineffective for failing to file a notice of appeal.  *See* [Doc. 11-8].  On May 18, 2023, the Colorado Court of Appeals affirmed the denial of postconviction relief.  [Doc. 11-13]. Separately, on June 1, 2023, the Colorado Court of Appeals considered Mr. Byrd-Farr's direct appeal and affirmed the judgment of conviction.  [Doc. 11-8].

Mr. Byrd-Farr initiated this action on September 10, 2024.  [Doc. 1].  He asserts nine claims in the Statement of Claims.[3]  *See* [Doc. 1-1].  In each claim, Mr. Byrd-Farr contends that his counsel was ineffective.  *See* [*id.*]; *see, e.g.*, [*id.* at 4 ("Counsel's error caused prejudice by not filing an [sic] Notice of Appeal.")].  Mr. Byrd-Farr also refers to "due process" and "equal protection" in each of his claims, but he does not develop any due process or equal protection arguments.  *See, e.g.*, [*id.* at 29].  Therefore, the Court construes Mr. Byrd-Farr's claims only as ineffective assistance of counsel claims.

Mr. Byrd-Farr specifically contends counsel was ineffective by failing to file a notice of appeal (Claim 1), [*id.* at 2]; failing to advise on the potential penalties (Claim 2), [*id.* at 29]; failing to call E.C. as a witness or introduce her exculpatory out-of-court statements (Claim 3), [*id.* at 32]; failing to make an opening statement (Claim 4), [*id.* at 35]; failing to cross-examine the victim on prior inconsistent statements (Claim 5), [*id.* at 38]; failing to

---

[3] Mr. Byrd-Farr identifies each claim as "Claim 1."  *See* [Doc. 1-1].  To avoid confusion, and consistent with how the claims are addressed by Respondents and how the Court has referred to Mr. Byrd-Farr's claims in the past, the Court will renumber the claims as Claims 1 through 9.  *See, e.g.*, [Doc. 50].

use Mr. Byrd-Farr's employment and incarceration records and other exculpatory material (Claim 6), [*id.* at 41]; relying on unlicensed and untrained investigators (Claim 7), [*id.* at 46]; failing to object to Colorado Rules of Evidence Rule 404(b) evidence (Claim 8), [*id.* at 51]; and failing to present mitigating evidence at sentencing (Claim 9), [*id.* at 55].

On September 19, 2024, during the initial review of this action, the Honorable Richard T. Gurley ordered Respondents Marc Fairbarn and the Attorney General of the State of Colorado (collectively, "Respondents") to file a Pre-Answer Response addressing the affirmative defenses of (1) timeliness under 28 U.S.C. § 2244(d), and (2) exhaustion of state court remedies pursuant to 28 U.S.C. § 2254(b)(1)(A), if Respondents intended to raise either or both of those defenses in this action. [Doc. 5 at 2–3]. On October 10, 2024, Respondents filed their Pre-Answer Response, arguing that some of Mr. Byrd-Farr's claims are unexhausted and procedurally defaulted. [Doc. 11 at 4–10]. Beginning on November 22, 2024, Mr. Byrd-Farr filed various documents, ostensibly in reply to Respondents' Pre-Answer Response. *See* [Doc. 19 through Doc. 34]. Most of these documents addressed the merits of the claims Mr. Byrd-Farr is asserting, as well as claims not raised in the Application. *See, e.g.*, [Doc. 19 at 2 (discussing "irreversible error" on the part of his attorney).]. Mr. Byrd-Farr did not address Respondents' affirmative defenses. *See* [Doc. 19 through Doc. 34].

On April 8, 2025, the Court entered an Order to Dismiss in Part. [Doc. 50]. The Court dismissed Claims 1 and 2 and the portion of Claim 6 that is premised on incarceration records and other potentially exculpatory evidence as procedurally barred.[4]

---

[4] The Court also noted that Mr. Byrd-Farr is not entitled to relief on Claim 1, in which he argues counsel was ineffective by failing to file a notice of appeal, because his right to pursue a direct appeal was restored, and he pursued a direct appeal. [Doc. 50 at 9 n.1].

[*Id.* at 9–10].  The Court also ordered Respondents to file an answer that fully addressed the merits of the remaining claims.   [*Id.* at 10].   Separately, the Court ordered Respondents to submit the state court record.   [Doc. 51 at 1–2].   On May 6, 2025, Respondents submitted the state court record.   *See* [Doc. 54].   On May 8, 2025, Respondents filed their Answer, arguing that Mr. Byrd-Farr's remaining claims lack merit.  [Doc. 55 at 4–23].  Beginning on May 28, 2025, Mr. Byrd-Farr filed various documents in reply to the Answer.  *See* [Doc. 56 through Doc. 81].  On June 10, 2025, the Court entered a Minute Order striking a number of Mr. Byrd-Farr's filings and granting Mr. Byrd-Farr leave to file a reply of fifteen pages.  [Doc. 82].  On July 8, 2025, Mr. Byrd-Farr filed his reply.  [Doc. 84].

## LEGAL STANDARDS

The Court must construe the papers filed by Mr. Byrd-Farr liberally because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).   However, the Court cannot and will not act as an advocate for a pro se litigant.  *See Hall*, 935 F.2d at 1110.

28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding.

28 U.S.C. § 2254(d).  Mr. Byrd-Farr bears the burden of proof under § 2254(d).  *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The Court's inquiry is straightforward "when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). "In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.*

The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Byrd-Farr seeks to apply a rule of law that was clearly established by the United States Supreme Court ("Supreme Court") at the time the state court adjudicated the claim on its merits. *Greene v. Fisher*, 565 U.S. 34, 38 (2011). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established federal law, the Court's inquiry pursuant to § 2254(d)(1) ends. *See id.* at 1018.

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404–05. A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the

Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard v. Boone*, 468 F.3d 665, 669 (10th Cir. 2006). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (quotation omitted). "A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts." *House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409–10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A decision is objectively unreasonable "only if all fairminded jurists would agree that the state court got it wrong." *Stouffer v. Trammel*, 738 F.3d 1205, 1221 (10th Cir. 2013) (quotation omitted). Furthermore, the Court considers the rule's specificity when considering whether a rule application was unreasonable. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). If a rule is more general, courts have "more leeway . . . in reaching outcomes in case-by-case determinations." *Id.* (quotation omitted). A state court's decision to decline to apply a specific legal rule that has not been "squarely established" by the Supreme Court is not an unreasonable application federal law. *Id.* (quotation omitted). In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are

inconsistent with the holding in a prior decision of [the Supreme] Court."  *Id*. at 102.  In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen*, 563 U.S. at 181.

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254."  *Maynard*, 468 F.3d at 671; *see also Harrington*, 562 U.S. at 102 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").  In order to obtain a writ of habeas corpus from a federal court, a state prisoner must demonstrate that the state court's decision on the claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington*, 562 U.S. at 103.

Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court.  28 U.S.C. § 2254(d)(2).  Pursuant to § 2254(e)(1), the Court presumes the state court's factual determinations are correct and Mr. Byrd-Farr bears the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  The presumption of correctness applies to factual findings of the trial court as well as state appellate courts.  *See Al-Yousif v. Trani*, 779 F.3d 1173, 1181 (10th Cir. 2015).  The presumption of correctness also applies to implicit factual findings.  *See Ellis v. Raemisch*, 872 F.3d 1064, 1071 n.2 (10th Cir. 2017).  "But if the petitioner can show that the state courts plainly misapprehended or misstated the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-

finding process, rendering the resulting factual finding unreasonable." *Smith v. Duckworth*, 824 F.3d 1233, 1241 (10th Cir. 2016) (cleaned up).

Finally, the Court's analysis is not complete even if Mr. Byrd-Farr demonstrates the state court decision is contrary to or an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented. *See Harmon v. Sharp*, 936 F.3d 1044, 1056 (10th Cir. 2019). If the requisite showing under § 2254(d) is made, the Court must consider the merits of the constitutional claim de novo. *See id.* at 1056–57.

Likewise, if a claim was not adjudicated on the merits in state court, and if the claim is not procedurally barred, the Court also must review the claim de novo and the deferential standards of § 2254(d) do not apply. *See id.* at 1057. However, even if a claim is not adjudicated on the merits in state court, the Court still must presume the state court's factual findings pertinent to the claim are correct under § 2254(e). *See id.*

## ANALYSIS

Following the Court's Order to Dismiss in Part, [Doc. 50], the only claims remaining to be considered on the merits are Claim 3, Claim 4, Claim 5, the part of Claim 6 that relates to employment records, Claim 7, Claim 8, and Claim 9. In each claim, Mr. Byrd-Farr contends counsel was ineffective. *See* [Doc. 1-1].

Clearly established federal law provides that a defendant in a criminal case has a Sixth Amendment right to the effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). To establish counsel was ineffective, Mr. Byrd-Farr must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his

defense.  *See id*. at 687.  If Mr. Byrd-Farr fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must be dismissed.  *See id.* at 697.

In general, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689.  There is "a strong presumption" that counsel's performance falls within the range of "reasonable professional assistance."  *Id*.  It is Mr. Byrd-Farr's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances.  *See id*.

In the context of federal habeas corpus review under § 2254(d), a state prisoner claiming counsel was ineffective "faces an even greater challenge."  *Harmon*, 936 F.3d at 1058 (quotation omitted).  "When assessing a state prisoner's ineffective-assistance-of-counsel claims on habeas review, [federal courts] defer to the state court's determination that counsel's performance was not deficient and, further, to the attorney's decision in how to best represent a client."  *Id.* (quotation omitted).  Thus, review under § 2254(d) is doubly deferential.  *See id.*  Furthermore, federal habeas courts must be cautious of "equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)."  *Id.* (quotation omitted).  Under § 2254(d), the question is "whether *any* reasonable argument exists that counsel satisfied *Strickland's* deferential standard," not whether counsel's actions were reasonable.  *Id.*  Because "the *Strickland* standard is a general standard, a state court has . . . more latitude to reasonably determine that a defendant has *not* satisfied that standard.  *Id.* (quotation omitted).

Under the prejudice prong, Mr. Byrd-Farr must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient

to undermine confidence in the outcome." *Id.*; *see also Harrington*, 562 U.S. at 112 (stating that "[t]he likelihood of a different result must be substantial, not just conceivable"). In determining whether Mr. Byrd-Farr has established prejudice, the Court must look at the totality of the evidence and not just the evidence that is helpful to Mr. Byrd-Farr. *See Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

## I.    Claim 3

In Claim 3, Mr. Byrd-Farr argues that counsel was ineffective in failing to call E.C. as a witness or introduce her exculpatory out-of-court statements. [Doc. 1-1 at 32]. E.C. was the victim's best friend and, as noted above, testimony at trial revealed that on one occasion the victim and E.C. performed oral sex on Mr. Byrd-Farr while he recorded it, and the victim was prompted to disclose the abuse by Mr. Byrd-Farr after messages between the victim and E.C. were discovered by a family member. [Doc. 11-13 at 2–3]. The Colorado Court of Appeals addressed this claim on the merits and determined Mr. Byrd-Farr failed to establish prejudice under *Strickland*. [*Id.* at 9–12]. It reasoned that:

> The prosecution didn't file any charges against [Mr.] Byrd-Farr relating to E.C. Although the prosecution listed E.C. as a potential witness, it didn't call her as a witness at trial because she had "not been cooperative" and had "indicated that [she did] not wish to participate with the [trial] process."

[*Id.* at 9]. Further, the Colorado Court of Appeals noted that Mr. Byrd-Farr himself had highlighted at the pretrial motions hearing that E.C. testified that she had never performed oral sex on him. [*Id.*]. However, the Colorado Court of Appeals pointed out that at the same hearing:

> E.C. also testified that the victim acted significantly more quiet and uncomfortable when they were around [Mr.] Byrd-Farr; she confronted the victim about it, and the victim confessed that for two years [Mr.] Byrd-Farr had been recording her performing oral sex on him and had been paying her for it; she saw the victim with a "wad of cash" one day, and the victim

11

> admitted it was from doing a video with [Mr.] Byrd-Farr; [Mr.] Byrd-Farr asked her on three separate occasions to perform oral sex on him, and two of those times indicated he would record her doing it; and [Mr.] Byrd-Farr showed her pictures from his phone of other girls, some half-nude, whom he claimed to be recruiting for modeling.

[*Id.* at 9–10].  Although Mr. Byrd-Farr argued that trial counsel should have called E.C. as a witness, should have introduced her exculpatory statements, and should have requested a continuance because of E.C.'s "uncooperativeness with the prosecution," the Colorado Court of Appeals noted that Mr. Byrd-Farr "also argue[d] that had counsel done so, the jury could've heard E.C.'s testimony contradicting the victim's description of the incident involving them both, thus undermining the victim's credibility."  [*Id.* at 10].  It further agreed with the post-conviction court's assessment that, "even if counsel's performance was deficient, [Mr.] Byrd-Farr hasn't established that it caused him prejudice."  [*Id.*].  The Colorado Court of Appeals noted that, "[g]iven E.C.'s testimony at the motions hearing—and the lack of any allegations suggesting she might've testified differently at trial—any testimony she might have provided would not have been entirely helpful to [Mr.] Byrd-Farr."  [*Id.* at 10–11].  The Colorado Court of Appeals highlighted that:

> [E.C.] testified about [Mr.] Byrd-Farr's multiple attempts to solicit her to engage in oral sex with him in much the same way he had solicited the victim, about the victim's confession of the abuse, and about the negative impact the abuse had had on the victim's demeanor, that likely would've been far more damaging than the discrepancy between the two girls' testimony about whether E.C. ever accepted [Mr.] Byrd-Farr's requests. Moreover, evidence of the messages between the two girls supports the victim's version of events, as they suggest that both girls had performed sexual acts on [Mr.] Byrd-Farr and that he had paid E.C. more than the victim because the victim had been less "into it" than E.C.

[*Id.* at 11].  Based on its analysis, the Colorado Court of Appeals concluded that "[u]nder these circumstances, there is no reasonable probability that had E.C.'s testimony been

presented at trial, the result would've been different." [*Id.*].

Mr. Byrd-Farr fails to demonstrate he is entitled to relief with respect to Claim 3 under the "contrary to" clause of § 2254(d)(1). *See* 28 U.S.C. § 2254. That is, he does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018.

Mr. Byrd-Farr also fails to demonstrate the state court decision is based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2). *See Harmon*, 936 F.3d at 1056. According to Mr. Byrd-Farr, E.C.'s testimony was critical because, contrary to the victim's testimony at trial, E.C. testified at a pretrial hearing that she had never performed oral sex on Mr. Byrd-Farr, she never engaged in any sex acts with Mr. Byrd-Farr or allowed herself to be recorded, and she was never paid any money by Mr. Byrd-Farr. [Doc. 1-1 at 32–34]. Furthermore, according to Mr. Byrd-Farr, E.C.'s testimony would have provided an innocent explanation for the messages between the victim and E.C. [*Id.*]. But the decision of the Colorado Court of Appeals is not premised on any contrary factual findings. Instead, the Colorado Court of Appeals relied on the fact that E.C.'s testimony at a pretrial hearing, and the absence of any suggestion that her trial testimony would have been different, was not entirely helpful to Mr. Byrd-Farr. [Doc. 11-13 at 11]. In particular, the Colorado Court of Appeals noted that, in addition to the statements Mr. Byrd-Farr argues are exculpatory or damaging to the victim's credibility, E.C. also testified at the pretrial hearing that Mr. Byrd-Farr made multiple attempts to solicit her to engage in oral sex with him in much the same way he had solicited the victim; the victim confessed to E.C. that she had been sexually abused

by Mr. Byrd-Farr for two years and that he had been paying her; and Mr. Byrd-Farr's abuse had a negative impact on the victim's demeanor. [*Id.*]. The Court presumes these factual findings are correct, and Mr. Byrd-Farr fails to rebut that presumption. *See* 28 U.S.C. § 2254(e)(1). Mr. Byrd-Farr also fails to demonstrate these factual findings were unreasonable in light of the evidence presented under 28 U.S.C. § 2254(d)(2).

Finally, Mr. Byrd-Farr is not entitled to relief under the "unreasonable application" clause of § 2254(d)(1). In particular, he fails to demonstrate the Colorado Court of Appeals' conclusion that E.C.'s testimony "likely would've been far more damaging than the discrepancy between the two girls' testimony about whether E.C. ever accepted [Mr.] Byrd-Farr's requests," [Doc. 11-13 at 11], is an unreasonable application of *Strickland*'s prejudice prong. Stated another way, Mr. Byrd-Farr fails to demonstrate the state court decision is so "lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. As noted above, under *Strickland*'s prejudice prong, "[t]he likelihood of a different result must be substantial, not just conceivable." *Id.* at 112.

Here, calling E.C. as a witness could have resulted in some testimony that would have been favorable to Mr. Byrd-Farr. But, as the Colorado Court of Appeals noted and as discussed above, E.C.'s testimony would not have been entirely helpful and her testimony would have included several inculpatory statements. [Doc. 11-13 at 11]. Under these circumstances, the Court cannot conclude that "all fairminded jurists would agree that the state court got it wrong." *Stouffer*, 738 F.3d at 1221 (quotation omitted).

For these reasons, Mr. Byrd-Farr is not entitled to relief with respect to Claim 3.

II.    **Claim 4**

Mr. Byrd-Farr contends in Claim 4 that counsel was ineffective by failing to make an opening statement.  [Doc. 1-1 at 35].  The Colorado Court of Appeals addressed this ineffective assistance of counsel claim on the merits and rejected it because Mr. Byrd-Farr failed to sufficiently allege prejudice under *Strickland*.  The state court reasoned as follows:

> Trial counsel initially reserved her opening statement.  But then, two days later, after the prosecution had rested and [Mr.] Byrd-Farr had been advised and opted not to testify, trial counsel indicated that there was no basis to give an opening because the defense wasn't going to present any witnesses.
>
> As the postconviction court remarked in denying this claim, [Mr.] Byrd-Farr's motion "d[id] not articulate what should have been said and how a failure to do so prejudiced him."  Even on appeal, he argues only vaguely that this claim "must be viewed holistically in terms of the opening statement [trial counsel] could have made if she had also prepared a meaningful defense to the charges."  But as we have already discussed in relation to [Mr.] Byrd-Farr's other claims, he has not sufficiently alleged that any of the evidence he claims trial counsel should have introduced or sought to exclude would've made any difference at trial.  Thus, we don't see how failing to provide an opening statement relating to those same issues would've made a difference at trial.  Accordingly, we agree with the postconviction court that [Mr.] Byrd-Farr failed to sufficiently allege prejudice as to this claim.

[Doc. 11-13 at 15–16 (citation omitted)].

Mr. Byrd-Farr fails to demonstrate he is entitled to relief with respect to Claim 4 under the "contrary to" clause of § 2254(d)(1) because he does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result.  *See House*, 527 F.3d at 1018.  Mr. Byrd-Farr also fails to demonstrate the state court decision is based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2).

Finally, Mr. Byrd-Farr is not entitled to relief under the "unreasonable application" clause of § 2254(d)(1).  Mr. Byrd-Farr argues that he provided counsel with information and evidence that could have been used in his defense, but he fails to demonstrate the state court's conclusion regarding the absence of any prejudice is so "lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington*, 562 U.S. at 103.  The Court agrees with the Colorado Court of Appeals in that, because Mr. Byrd-Farr fails to demonstrate the evidence he claims trial counsel should have introduced or sought to exclude would have made a difference at trial, he cannot demonstrate prejudice under *Strickland* premised on counsel's failure to give an opening statement discussing those issues.

For these reasons, Mr. Byrd-Farr is not entitled to relief with respect to Claim 4.

## III.    Claim 5

Mr. Byrd-Farr contends in Claim 5 that counsel was ineffective by failing to cross-examine the victim on two prior inconsistent statements.  [Doc. 1-1 at 38].  The first prior inconsistent statement relates to when the abuse started, and the second relates to the victim's "initial outcry," in which she stated Mr. Byrd-Farr recorded her and E.C. performing oral sex on each other rather than jointly on Mr. Byrd-Farr.  [*Id.*].

As to the first issue, the victim stated during a forensic interview that the abuse began one week later than her trial testimony suggested.   [Doc. 11-13 at 7].   More specifically, as described by the Colorado Court of Appeals, the victim "indicated in her forensic interview that the abuse started a week after her conversation with Byrd-Farr about wanting to be a model, [and] she testified at trial that the abuse started the same

day."  [*Id.*].  The state court declined to consider this particular issue because Mr. Byrd-Farr failed to raise it in his postconviction motion.  *See* [*id.*].

As to the second issue, the state court addressed the claim on the merits and reasoned as follows:

> Second, [Mr.] Byrd-Farr points out that while the victim initially told E.C.'s mother that [Mr.] Byrd-Farr had recorded her and E.C. giving oral sex to each other, she testified at trial that he recorded them both performing oral sex on him.  The victim testified at trial that when her messages with E.C. discussing payments from [Mr.] Byrd-Farr were discovered, she was first confronted by—and made her first disclosure to—E.C.'s mother.  At a pretrial motions hearing, E.C.'s mother testified that shortly after making her initial disclosure, the victim admitted that she'd lied about [Mr.] Byrd-Farr asking the girls to perform oral sex on each other; explained that she'd been afraid, hadn't known how to admit what [Mr.] Byrd-Farr had been doing to her, and had thought that if she said what she did it would break the ice; and stated that although she'd lied about that one detail, everything else she'd said was true.  And in her forensic interview, the victim gave essentially the same account of that incident as she gave at trial.
>
> We agree with the postconviction court's assessment that, even if counsel's performance was deficient, [Mr.] Byrd-Farr hasn't sufficiently alleged that it caused him prejudice.  There simply is no reasonable probability that pointing out this discrepancy in the victim's initial outcry would have altered the result of the trial.  In fact, if the victim had been questioned about her statements and had given a similar explanation that at first it was difficult for her to admit what [Mr.] Byrd-Farr had been doing to her, it likely would've only reiterated how young she was and how much abuse she'd suffered before it finally came to light.

[*Id.* at 7–9 (citations omitted)].

### A.    First Prior Inconsistent Statement

The Court reviews counsel's failure to cross-examine the victim about the first prior inconsistent statement de novo because the Colorado Court of Appeals did not address the claim on the merits.  To reiterate, the victim testified at trial that the abuse started the day of her conversation with Mr. Byrd-Farr about wanting to be a model, but she indicated in her forensic interview that the abuse began a week after that conversation.  [*Id.* at 7–

9].  The victim testified at trial that the conversation with Mr. Byrd-Farr about wanting to be a model occurred during the summer of 2010.  *See* Trial Tr. 7/28/15 at 92–93, 142.[5]

Respondents maintain this claim fails on both *Strickland* prongs.  [Doc. 55 at 9].  As to deficient performance, Respondents argue that counsel's decision not to raise the discrepancy between the victim's forensic interview and her trial testimony as to when the abuse began was a reasonable trial strategy.  [*Id.* at 16].  Respondents contend that the discrepancy was minor; Mr. Byrd-Farr does not explain how shifting the date of when the abuse began by one week was relevant to his defense; and, to the extent the point of raising the issue was to challenge the victim's credibility, attacking the victim with a minor inconsistency could have appeared petty and dismissive to the jury.  [*Id.* at 15–17].  As to prejudice, Respondents argue that Mr. Byrd-Farr fails to show a reasonable probability that the impeachment testimony would have changed the jury's verdict.   [*Id.* at 16].  Additionally, Respondents note that the victim's forensic interview was admitted into evidence and a recording of the interview was played for the jury, meaning the evidence presented to the jury included the timing discrepancy, and further highlighting the forensic interview could have hurt the defense.  [*Id.* at 17].

Mr. Byrd-Farr does not dispute the fact that a recording of the forensic interview was played for the jury.  *See generally* [Doc. 1-1].  But, according to Mr. Byrd-Farr, the timing discrepancy is not minor, apparently because he may have been incarcerated in either the Denver County Jail or a jail in Nebraska.  *See* [*id.* at 42].  In two other claims, Claim 6 and Claim 7, Mr. Byrd-Farr alleges he was in the Denver County Jail "in the

---

[5] The Trial Court transcript forms part of the state court record.  *See* [Doc. 54].  The state court record is not accessible to the public, but it is located in the Clerk's Office of the District Court of the District of Colorado.

summer of 2010 to the winter of 2010," and that he was in the "Omaha Nebraska County Jail during this claim." [*Id.* at 42, 47].

The Court is not persuaded that the absence of any cross-examination of the victim with respect to the timing discrepancy rises to the level of a constitutional violation under *Strickland*. For one thing, Mr. Byrd-Farr fails to overcome the strong presumption that counsel's performance was reasonable. *See Strickland*, 466 U.S. at 689. He does not allege specific facts that demonstrate the alleged error was not a sound strategy under the circumstances. *See id.*

And, even if the Court could find that counsel's performance was deficient with respect to the timing discrepancy, Mr. Byrd-Farr fails to show a reasonable likelihood that the jury verdict would have been different. *See id.* at 694. Mr. Byrd-Farr does allege he was in the Denver County Jail beginning on some unspecified date in the summer of 2010, but that allegation is too vague to negate the victim's testimony that the abuse also began in the summer of 2010. *See* [Doc. 1-1 at 42, 47]. Similarly, Mr. Byrd-Farr's vague allegation that he was in the "Omaha Nebraska County Jail during this claim" also does not negate the victim's testimony that the abuse began in the summer of 2010. *See* [*id.* at 47]. The jury convicted Mr. Byrd-Farr despite hearing the victim's inconsistent statements about when the abuse began. Thus, the Court cannot conclude Mr. Byrd-Farr has shown a reasonable probability the jury's verdict would have been different if counsel had highlighted the one-week discrepancy between the victim's statement in the forensic interview and her trial testimony with respect to when the abuse began.

For these reasons, Mr. Byrd-Farr is not entitled to relief with respect to this portion of Claim 5.

**B.**     **Second Prior Inconsistent Statement**

The second prior inconsistent statement relates to the victim's initial outcry in which she stated Mr. Byrd-Farr recorded her and E.C. performing oral sex on each other rather than jointly on Mr. Byrd-Farr.  [*Id.* at 38].  At trial, the victim testified that Mr. Byrd-Farr recorded them both performing oral sex on him.  [Doc. 11-13 at 2, 7–8].  The Colorado Court of Appeals addressed the merits of this portion of Claim 5; therefore, the Court reviews this portion of Claim 5 under the deferential standards of § 2254(d).  As noted above, the Colorado Court of Appeals rejected this claim because Mr. Byrd-Farr failed to show prejudice under *Strickland*.  [*Id.* at 15–16 (citation omitted)].

Mr. Byrd-Farr fails to demonstrate he is entitled to relief under the "contrary to" clause of § 2254(d)(1) because he does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result.  *See House*, 527 F.3d at 1018.  Mr. Byrd-Farr also fails to demonstrate the state court decision is based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2).

Finally, Mr. Byrd-Farr is not entitled to relief under the "unreasonable application" clause of § 2254(d)(1) because he fails to demonstrate the state court's decision is so "lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington*, 562 U.S. at 103.  In light of the victim's explanation for why she originally lied, an explanation that would have been presented to the jury if she had been questioned about this discrepancy, as well as the fact that the victim's statements in the forensic interview were essentially the same as her trial testimony, it was not unreasonable for the Colorado Court of Appeals

to conclude that questioning the victim about the discrepancy "likely would've only reiterated how young she was and how much abuse she'd suffered before it finally came to light," [Doc. 11-13 at 8–9], and would not have altered the jury's verdict.

Thus, Mr. Byrd-Farr also is not entitled to relief with respect to this part of Claim 5.

## IV.    Claim 6

In the portion of Claim 6 that remains to be considered on the merits, Mr. Byrd-Farr contends that counsel was ineffective by failing to use Mr. Byrd-Farr's employment records to show his lack of access to the victim.[6]  [Doc. 1-1 at 41].  The Colorado Court of Appeals addressed this portion of Claim 6 on the merits and rejected the claim under *Strickland's* prejudice prong, reasoning as follows:

> [Mr.] Byrd-Farr alleged in his motion that he provided trial counsel with employment records to show he worked full time and couldn't have been at the house as often as the prosecution suggested he was, but counsel didn't use that evidence at trial.
>
> We agree with the postconviction court that [Mr.] Byrd-Farr again has not sufficiently alleged that any supposedly deficient performance prejudiced him.  As the court explained, "the records could not possibly have established that [Mr.] Byrd-Farr had no access to the victim" because, "given the four-year date range for the offense, employment records may have shown that he had limited access to the victims at certain times, but increased access when he was not working."  We agree with its assessment that while the employment records may have shown that [Mr.] Byrd-Farr had limited access to the victim, they could not have shown that he had such minimal access over the relevant four-year period as to influence the jury's verdict.

[Doc. 11-13 at 13–14 (cleaned up)].

Mr. Byrd-Farr fails to demonstrate he is entitled to relief with respect to Claim 6

---

[6] As noted above, on April 8, 2025, the Court entered an Order to Dismiss in Part that dismissed the portion of Claim 6 that is premised on incarceration records and other potentially exculpatory evidence.  [Doc. 50].

under the "contrary to" clause of § 2254(d)(1) because he does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018. Mr. Byrd-Farr also fails to demonstrate the state court decision is based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2).

Finally, Mr. Byrd-Farr is not entitled to relief under the "unreasonable application" clause of § 2254(d)(1). He argues his employment records "would have refuted [the victim's] account in some respect[s]: she testified she was home alone 'all the time' and Mr. Byrd-Farr was over 'constantly,' which Mr. Byrd-Farr['s] employment records could have contradicted," and that "[b]ecause [the victim's] credibility was central to the case, trial counsel's failure to use the employment records to undermine her credibility, and render her account less plausible, was prejudicial enough to undermine confidence in the verdict." [Doc. 84 at 12–13]. The Court is not persuaded because Mr. Byrd-Farr fails to demonstrate the state court decision is so "lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. As the state court noted, Mr. Byrd-Farr's employment records could not have shown he had no access to the victim over the four-year range of the offense. It was reasonable to conclude Mr. Byrd-Farr did not suffer prejudice under *Strickland* as a result of counsel's failure to use the employment records.

For these reasons, Mr. Byrd-Farr is not entitled to relief with respect to the remaining portion of Claim 6.

V.    **Claim 7**

Mr. Byrd-Farr contends in Claim 7 that counsel was ineffective by relying on unlicensed and untrained investigators.  [Doc. 1-1 at 46].  According to Mr. Byrd-Farr, "counsel used two people as investigators, neither of whom was any kind of certified investigator or had any kind of experience being an investigator and they were unable to find [E.C.]."  [Doc. 84 at 13].  The Colorado Court of Appeals addressed this claim on the merits and rejected the claim on *Strickland's* prejudice prong.  The state court reasoned that:

> The only indication of prejudice [Mr.] Byrd-Farr alluded to in his postconviction motion was the investigators' failure to find E.C.  But because [Mr.] Byrd-Farr hasn't sufficiently alleged that he was prejudiced by his counsel's failure to obtain E.C.'s testimony, he similarly hasn't sufficiently alleged that he was prejudiced by his counsel's failure to retain licensed investigators who might have found E.C.

[Doc. 11-13 at 12].

Mr. Byrd-Farr fails to demonstrate he is entitled to relief with respect to Claim 7 under the "contrary to" clause of § 2254(d)(1) because he does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result.  *See House*, 527 F.3d at 1018.  Mr. Byrd-Farr also fails to demonstrate the state court decision is based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2).

Finally, Mr. Byrd-Farr is not entitled to relief under the "unreasonable application" clause of § 2254(d)(1) because he fails to demonstrate the state court decision is so "lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington*, 562 U.S. at

103.   Mr. Byrd-Farr relies on what he argues would have been critical testimony and statements from E.C., testimony and statements discussed above in connection with Claim 3.  However, the Court has already concluded Mr. Byrd-Farr is not entitled to relief with respect to Claim 3 because he fails to demonstrate he suffered prejudice under *Strickland* as a result of counsel's failure to call E.C. as a witness or introduce her exculpatory out-of-court statements.  Because the absence of E.C.'s testimony was not prejudicial, it was not unreasonable to conclude counsel's failure to retain investigators who could have located E.C. also was not prejudicial under *Strickland*.

For these reasons, Mr. Byrd-Farr is not entitled to relief with respect to Claim 7.

## VI.   Claim 8

Mr. Byrd-Farr contends in Claim 8 that counsel was ineffective by failing to object under Rule 404(b) of the Colorado Rules of Evidence to two statements from the victim's older sister, who was dating Mr. Byrd-Farr.   [Doc. 1-1 at 51].   The two statements in question were that the couple had sex "all the time," and that Mr. Byrd-Farr frequently recorded their sexual activities, which featured "a lot of oral."   [*Id.*].   The Colorado Court of Appeals addressed this claim on the merits and determined Mr. Byrd-Farr did not demonstrate prejudice under *Strickland*. [Doc. 11-13 at 14–15].   The state court reasoned as follows:

> At trial, the prosecution elicited testimony from the victim's sister that when she was dating [Mr.] Byrd-Farr he recorded them being intimate "all the time" and "it was a lot of oral."   The prosecution then attempted to introduce still frames pulled from those video recordings.  [Mr.] Byrd-Farr's trial counsel did not object.   However, the trial court called counsel to the bench and expressed concern that the photos hadn't been addressed in its earlier hearing on [Colorado Rule of Evidence] 404(b) evidence and might require a limiting instruction.   After some discussion, the prosecution withdrew its request to admit the photos.   No limiting instruction was requested or given regarding the sister's testimony.

24

> [Mr.] Byrd-Farr claims that trial counsel should've objected to and prevented the introduction of the sister's testimony.
>
> We again agree with the postconviction court that, even assuming deficient performance, [Mr.] Byrd-Farr cannot establish prejudice. The sister's testimony that she'd had consensual oral sex with [Mr.] Byrd-Farr and that he'd recorded it with her knowledge and consent was not damaging in and of itself. Given the extensive evidence against [Mr.] Byrd-Farr—including, among other things, the victim's testimony, the messages between the victim and E.C., and the testimony of another sister of the victim who said [Mr.] Byrd-Farr propositioned to record her having oral sex with him when she was in the ninth or tenth grade—the testimony about consensual sex with the sister who actually was his girlfriend cannot possibly have affected the outcome of the trial.

[*Id.*].

Mr. Byrd-Farr fails to demonstrate he is entitled to relief with respect to Claim 8 under the "contrary to" clause of § 2254(d)(1) because he does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018. Mr. Byrd-Farr also fails to demonstrate the state court decision is based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2). Mr. Byrd-Farr does allege that the still photographs of Mr. Byrd-Farr and the victim's older sister were "admitted and shown to the jury." [Doc. 84 at 14]. But the state court's factual determination that the prosecution withdrew its request to admit the photos is presumptively correct, and Mr. Byrd-Farr fails to present any clear and convincing evidence to overcome that presumption. *See* 28 U.S.C. § 2254(e)(1). And the Court's independent review of the state court record confirms that the photos were not admitted into evidence. *See* Trial Tr. 7/28/15 at 175–78. Therefore, the factual predicate for Claim 8 is limited to the testimony that the couple had sex "all the time" and

that Mr. Byrd-Farr frequently recorded their sexual activities, which featured "a lot of oral."

Mr. Byrd-Farr is not entitled to relief under the "unreasonable application" clause of § 2254(d)(1) because he fails to demonstrate the state court decision is so "lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. In light of the "extensive evidence" against Mr. Byrd-Farr as outlined above, it was not unreasonable for the Colorado Court of Appeals to conclude there was no reasonable probability the result of the trial would have been different if counsel had objected to the statements of the victim's sister about her consensual sexual encounters with Mr. Byrd-Farr.

Therefore, Mr. Byrd-Farr is not entitled to relief with respect to Claim 8.

## VII.    Claim 9

Mr. Byrd-Farr contends in Claim 9 that counsel was ineffective by failing to present mitigating evidence at sentencing. [Doc. 1-1 at 55]. The Colorado Court of Appeals addressed this claim on the merits and rejected it because Mr. Byrd-Farr failed to demonstrate prejudice under *Strickland*. The state court reasoned as follows:

> During the sentencing hearing, trial counsel did not present mitigating evidence or witnesses. Instead, she argued that [Mr.] Byrd-Farr was "not the monster" portrayed by the prosecution, suggesting that according to the presentence report he "does not pose a great risk to the community." She also argued that the truth of what really happened was unknown, said the victim's family was dysfunctional, pointed to contradictions in E.C.'s motions hearing testimony, and criticized E.C.'s failure to testify at trial. She concluded by asking the court to "temper justice with mercy." [Mr.] Byrd-Farr then spoke at length on his own behalf.

> At the end of the hearing, the court sentenced [Mr.] Byrd-Farr to concurrent terms for a total of twelve years to life in the custody of the Department of Corrections. As the court noted, that was on the low end of the eight-to-twenty-four-year indeterminate sentencing range.

> We agree with the postconviction court's conclusion that [Mr.] Byrd-Farr did
> not sufficiently allege any prejudice with respect to this claim. Even if trial
> counsel rendered deficient performance by not presenting mitigating
> evidence at the sentencing hearing, [Mr.] Byrd-Farr never alleged what
> mitigating evidence counsel could have brought and how it would have made
> a difference in his sentence. Thus, his claim is bare and conclusory and
> does not warrant a hearing.

[Doc. 11-13 at 17–18 (citations omitted)].

Mr. Byrd-Farr fails to demonstrate he is entitled to relief with respect to Claim 9 under the "contrary to" clause of § 2254(d)(1) because he does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018. Mr. Byrd-Farr also fails to demonstrate the state court decision is based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2).

Finally, Mr. Byrd-Farr is not entitled to relief under the "unreasonable application" clause of § 2254(d)(1). His conclusory assertions regarding prejudice are not sufficient to warrant habeas corpus relief. *See Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) (stating that "mere speculation is not sufficient" to demonstrate prejudice under *Strickland*); *see also Weatherall v. Sloan*, 415 F. App'x 846, 849 (10th Cir. 2011) ("We conclude that the Colorado Court of Appeals's decision was not contrary to or an unreasonable application of federal law because [the applicant] made no more than vague and conclusory allegations to support his conspiracy claim."). Thus, Mr. Byrd-Farr fails to demonstrate the state court decision is so "lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

For these reasons, Mr. Byrd-Farr is not entitled to relief with respect to Claim 9.

## CONCLUSION

For the reasons discussed in this order, Mr. Byrd-Farr is not entitled to relief on any of his remaining claims. Accordingly, **IT IS ORDERED** that:

(1)    The Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, [Doc. 1], is respectfully **DENIED**, and this case is **DISMISSED with prejudice**;

(2)    There is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c); and

(3)    A copy of this Order shall be mailed to Mr. Byrd-Farr at:

Fernando Byrd-Farr
#170283
Fremont Correctional Facility
P.O. Box 999
Canon City, CO 81215-0999

DATED:  October 24, 2025                    BY THE COURT:

Nina Y. Wang
United States District Judge